UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIANNA STURGIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-00738-JMS-MJD |
| | ) | |
| JARED SILVERS, | ) | |
| ALEX BENZIMRA, | ) | |
| DYLAN SCHWABER, | ) | |
| JESSE SCHREIBMAN, | ) | |
| JAKOB WEINGOLD, | ) | |
| CHAD RUDDEN, | ) | |
| JOSEPH M. BAUER, | ) | |
| CODY ALLEN, | ) | |
| BLAIR BODEK, and | ) | |
| DAVID BELL, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

In 2014, Dianna Sturgis, then a freshman at Indiana University ("IU"), attended a party at a house rented by several other IU students. During the party, Ms. Sturgis was standing on a second story balcony when the balcony railing collapsed and Ms. Sturgis fell to the ground. As a result of the injuries she suffered, Ms. Sturgis brought suit against several individuals, including the landlord of the house and its ten tenants, alleging negligence. [Filing No. 42.]

Nine tenants[1] filed separate Motions for Summary Judgment, each of which is ripe for the Court's review. Accordingly, the Court will now consider Motions filed by tenants Chad Rudden, Blair Bodek, Jared Silvers, Jakob Weingold, Joseph Bauer, Jesse Schreibman, Cody Allen, David Bell, and Alex Benzimra, (collectively, "Defendants"). [Filing No. 297; Filing No. 300; Filing

---

[1] On October 21, 2016, a default was entered against the tenth Defendant, Dylan Schwaber pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. [Filing No. 185.]

No. 303; Filing No. 306; Filing No. 309; Filing No. 312; Filing No. 316; Filing No. 319; and

Filing No. 322.]  In doing so, this Court must consider the holdings set forth in recent Indiana

premises liability cases such as *Rogers v. Martin*, 63 N.E.3d 316 (Ind. 2016), along with time-

honored principles found in cases such as *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991).

In addition to Defendants' nine Motions for Summary Judgment, the Court will also

consider Objections filed by three Defendants.  [Filing No. 342 at 1; Filing No. 343 at 1-2; Filing

No. 347 at 2.]

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear,

whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the

asserted fact by citing to particular parts of the record, including depositions, documents, or

affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the

materials cited do not establish the absence or presence of a genuine dispute or that the adverse

party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).

Affidavits or declarations must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R.

Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion

can result in the movant's fact being considered undisputed, and potentially in the grant of

summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts

that are material to the decision.  A disputed fact is material if it might affect the outcome of the

suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

#### A.     The Premises

On January 26, 2013, Defendants entered into a lease (the "Lease") with Timarron Real Estate, LLC ("Timarron") to rent a house located at 707 East Eighth Street, in Bloomington,

Indiana (the "House"). [Filing No. 326-1 at 2.] The House was constructed in or around the year 1921, and Timarron had owned the House since approximately 2002. [Filing No. 305-2 at 3; Filing No. 305-2 at 13.] Timarron rented the House to tenants continuously from 2002 until 2014, with the exception of one year and one semester, during which the House was not rented. [Filing No. 305-2 at 3.] In addition to owning the House, Timarron also managed the property.

The House featured an area above the sunroom on the south side of the structure which was used as a porch or balcony. [Filing No. 305-2 at 7.] This area was surrounded on three sides by a redwood railing. [Filing No. 305-2 at 9.] Prior to Defendants renting the House, no previous tenants had complained about the condition of the balcony railing. [Filing No. 305-2 at 10.]

Pursuant to the Lease, Defendants accepted the House in the condition in which it existed as of the date of the Lease, as follows:

> herein.
> 8. Residents hereby accept Premises in its present condition except as specified on the move-in inspection form.

[Filing No. 326-1 at 3.] In addition, Defendants agreed to refrain from making alterations to the House's doors or windows, and agreed to keep the House clean, as follows:

> 10. Residents hereby agree that no alterations are to be made to the doors or windows (such as additional locks or deadbolts), woodwork, walls, or floors without written consent of Lessor. Residents also agree that no satellite dishes or other audio-visual equipment shall be installed on the exterior of the Premises without written consent of the Lessor. Residents shall not cause or permit any alterations, additions, or changes, of or upon any part of the Premises without first obtaining the written consent of Lessor.
> 11. Residents shall: (a) keep the unit in a clean condition during their occupancy; (b) pay for all damages to the Premises or to any other Resident or other person(s) caused by waste, misuse, or neglect of Residents or their guests; (c) not allow dogs, cats, or other domestic animals or pets on the Premises. Harboring a pet shall be considered a material breach and automatic eviction will result, unless written consent from Lessor has been given and additional deposits posted; (d) be responsible for any stoppage caused to the plumbing or damage to other equipment, appliances, garbage disposals, or fixtures in or on the Premises caused by misuse; (e) be responsible for doors, locks, windows, screens; (f) return unit provided by Lessor to a clean condition at the end of the rental term; and (g) furnish and pay for ALL utility costs and services, including but not limited to water, sewer, electricity, telephone, and cable, incurred by them.
> 12. Residents shall permit Lessor or any of their agents to enter said Premises during all reasonable hours to 2:44 hours

[Filing No. 326-1 at 3.] Further, Defendants agreed to permit Timarron to enter the House to examine the House and make repairs thereto, as follows:

services, including but not limited to water, sewer, electricity, telephone, and cable, incurred by them.
12. Residents shall permit Lessor or any of their agents to enter said Premises during all reasonable hours (9:00AM to 5:00PM on any day) to examine and protect same, to show Premises to prospective Residents, or to make such repairs, additions or alterations thereto as may be deemed necessary by Lessor. During such inspection, Residents or a representative of Residents may be present; however, Lessor may enter the Premises at any time in the event of a bona fide emergency.

[Filing No. 326-1 at 3.]

## B. The Party

On April 12, 2014, Ms. Sturgis was a freshman at IU. [Filing No. 305-1 at 9.] At the time, she did not know Defendants and did not know who lived at the House. [Filing No. 305-1 at 9.] She learned that a party was occurring at the House via a group chat between the members of her sorority pledge class. [Filing No. 299 at 12.] Once at the party, Ms. Sturgis voluntarily went out onto the balcony. [Filing No. 299 at 11.] At some point while on the balcony, Ms. Sturgis leaned on the railing. [Filing No. 299 at 11; Filing No. 305-1 at 17.] She did not see anything about the railing that made her think that she should not lean on it. [Filing No. 299 at 11.] While Ms. Strugis was on the balcony, the railing collapsed, and Ms. Sturgis fell from the second story balcony on to the ground below. [Filing No. 305-1 at 3.]

At the time of the railing collapse, most Defendants were in various locations within the House, as follows:

- Blair Bodek, David Bell, Joseph Bauer and Cody Allen were not on the balcony when it collapsed, [Filing No. 299 at 16; Filing No. 302 at 3; Filing No. 311 at 3; Filing No. 318 at 2];

- Jakob Weingold and Jesse Schreibman were both on the balcony when it collapsed, with their backs to the balcony, [Filing No. 305-4 at 5; Filing No. 305-4 at 9; Filing No. 314 at 6];

- Jared Silvers had been in the house for approximately 20 minutes at the time of the collapse, and was in the kitchen downstairs, [Filing No. 305-5 at 3]; and

- Alex Benzimra was on the balcony when the railing collapsed, [Filing No. 324 at 6].

- Chad Rudden was not present at the house at any point during the party and was studying at a library on IU's campus. [Filing No. 299 at 19.]

Following the railing collapse, officers from the Bloomington Police Department responded to the report of a balcony collapse at the party and noted in their report that "some people were injured during the incident." [Filing No. 326-9.]

As a result of the fall, Ms. Sturgis suffered a bruised lung, a bruised rib, several scratches on her body, a chipped tooth, and a bruised eye. [Filing No. 299 at 8.] In addition, she developed an increased fear of heights and began having nightmares. [Filing No. 299 at 8.]

### C.     Procedural Background

On May 8, 2015, Ms. Sturgis filed suit in this Court against Defendants' landlord alleging negligence. [Filing No. 1.] Ms. Sturgis eventually amended her Complaint to include Defendants. [Filing No. 42.] In the intervening two years, Ms. Sturgis settled her claims against Defendants' landlord, such that Defendants, along with Dylan Schwaber, are the only remaining defendants in this action. [Filing No. 212.] Subsequently, Defendants each filed separate Motions for Summary Judgment. [Filing No. 297; Filing No. 300; Filing No. 303; Filing No. 306; Filing No. 309; Filing No. 312; Filing No. 316; Filing No. 319; and Filing No. 324.] Within their reply briefs, three defendants objected to Ms. Sturgis' Brief in Opposition to Summary Judgment. [Filing No. 342 at 1; Filing No. 343 at 1-2; Filing No. 347 at 2]. The Court will consider those objections before turning to the merits of Defendants' respective Motions for Summary Judgment.

### D.     Objection to Ms. Sturgis' Response Briefs

Mr. Silvers, Mr. Weingold, and Mr. Bodek each object to Ms. Sturgis' Brief in Opposition to Summary Judgment, [Filing No. 327], because they argue that it exceeds the allotted page

limitation set forth by Indiana Trial Rule 56 by five pages. [Filing No. 342 at 1; Filing No. 343 at 1-2; Filing No. 347 at 2]. However, Ms. Sturgis' 20 page response brief is well within the 35 page limitation set forth by Local Rule 7-1(e)(1) for the United States District Court for the Southern District of Indiana.

It is well established that under the Erie doctrine, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Mr. Silvers, Mr. Weingold, and Mr. Bodek do not provide any support for the proposition that the rule regarding page limitations constitutes state substantive law such that the Indiana Trial Rule should govern. To the contrary, the page limitations rule is quintessentially procedural in nature. Accordingly, the objections put forth by Mr. Silvers, Mr. Weingold, and Mr. Bodek are **OVERRULED**. The Court will give due consideration to Ms. Sturgis' response brief in its entirety.

### III.
### DISCUSSION

This matter is before the Court on nine Motions for Summary Judgment, with arguments spanning more than twenty briefs. Such voluminous filings obscure the seeming simplicity of the legal principle at issue – negligence. But as observed in 1881, and no less true today, negligence "is a complex conception." *Cincinnati, I., St. L. & C. Ry. Co. v. Grames*, 34 N.E. 613, 617 (Ind. App. 1893) (quoting Oliver Wendell Holmes, The Common Law, 115 (1881)).

Sitting in diversity, this Court's duty "is to decide issues of Indiana state law" by predicting how "the Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). As such, this Court must "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the

present case were before it now." *Golden v. State Farm Mut. Auto. Ins. Co.*, 745 F.3d 252, 255 (7th Cir. 2014) (citations omitted).

For over a century, Indiana courts have set forth the elements of actionable negligence, and although the precise language has changed, the basic test has not. *See, e.g.*, *Faris v. Hoberg*, 33 N.E. 1028, 1030 (Ind. 1893); *see also Neal v. Home Builders, Inc.*, 111 N.E.2d 280, 284 (Ind. 1953); *Harris v. Indiana Gen. Serv. Co.*, 189 N.E. 410, 412 (Ind. 1934). The "essential elements" for a negligence action in Indiana are "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014) (citations omitted).

In this case, the fact of an injury, is not in dispute. Thus, the two questions set forth in the parties' briefs are whether Defendants owed Ms. Sturgis a duty, and, if so, whether they breached that duty. Several Defendants present identical or overlapping arguments on these two questions. Similarly, Ms. Sturgis' arguments in her responses and surreplies are duplicative. As such, the Court will dispense with presenting an exhaustive summary of each brief, and will instead present an overview of Indiana principles of the elements of duty and breach before summarizing the parties' respective arguments for each element.

### A.    Duty

It is well settled that duty is a legal question for the court. *Polet v. ESG Sec., Inc.*, 66 N.E.3d 972, 978 (Ind. Ct. App. 2016); *see also Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 394 (Ind. 2016) ("In a negligence action, whether a duty exists is a question of law for the court to decide"); *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind. 1992) ("Whether a defendant owes a duty to a plaintiff is a question of law").

Despite the abundance of Indiana cases having to do with duty in a variety of negligence contexts, the parties have not provided, and the Court has not identified, any case with analogous facts. Perhaps the closest is a 1993 Indiana Court of Appeals case in which a plaintiff "found himself on the upstairs balcony with his friend," after "drinking several beers and smoking some marijuana." *Dickison v. Hargitt*, 611 N.E.2d 691, 693 (Ind. Ct. App. 1993). "Feeling romantically inclined, he took a step toward [his friend] to kiss her, but slipped on some twigs or branches littering the balcony floor. As he slipped, he clutched the balcony's twenty-seven-inch high wooden railing. The rail failed." *Id.* In a suit against the landlord and the tenant, the trial court found that the plaintiff had "failed to present a prima facie case of negligence." *Id.* at 693. Although the plaintiff in *Dickison* appealed the trial court's decision as it related to the landlord, he declined to pursue the tenant on appeal. *Id.* at 693 n.1. Therefore, neither *Dickison*, nor any other case identified by the parties, offers this Court a definitive analysis for Ms. Sturgis' claims. Instead, the Court must examine a body of law consisting of varied, fact-sensitive negligence cases. The type of claim presented by Ms. Sturgis, however, narrows the field slightly.

Ms. Sturgis' suit is "based upon the negligence theory of premises liability." [Filing No. 330 at 1.] In that arena, "Indiana courts have long said that the entrant's status on the land determines the duty that the landowner (or occupier) owes to [her]." *Burrell*, 569 N.E.2d at 639. "[T]ypically, the first step in resolving a premises liability case is to determine the plaintiff's visitor status." *Rider v. McCamment*, 938 N.E.2d 262, 266-67 (Ind. Ct. App. 2010). Therefore, in order to determine what duty, if any, Defendants owed Ms. Sturgis, the Court must first determine whether she was an invitee, a licensee, or a trespasser. *Burrell*, 569 N.E.2d at 639 (setting forth the respective duties a landowner owes to each category of persons entering the land).

The parties do not dispute Ms. Sturgis' status, and universally classify her as an invitee. [Filing No. 325 at 7 (in which Ms. Sturgis argues that "[a]s a social guest" she was an invitee); Filing No. 298 at 3 (in which Mr. Rudden argues that "[a] social guest is an invitee"); Filing No. 304 at 7 (same argument from Mr. Silvers); Filing No. 307 at 7 (same argument from Mr. Weingold)]. The Court agrees with this characterization and will, therefore, analyze Ms. Sturgis' claims pursuant to Indiana premises liability principles surrounding the duty owed to invitees.

A related inquiry is whether, as tenants rather than landowners, Defendants' duty to Ms. Sturgis is altered. Ms. Sturgis sets forth a test for the landowner/invitee duty before devoting several pages of briefing to her argument that possession for the purpose of premises liability does not require ownership. [Filing No. 325 at 9.]

For their part, Defendants do not argue that a different test for landowner/invitee duty applies to them because of their status as renters. Instead, several Defendants argue that, in addition to failing to present sufficient evidence under the landowner/invitee duty test, they owed no duty to Ms. Sturgis because they lacked the requisite control over the premises. Mr. Rudden, for example, argues that he lacked "control over the house when the accident happened" because he was at the library at the time. [Filing No. 298 at 5 (*citing Rider*, 938 N.E.2d at 268-69).] Mr. Bodek argues that there is no evidence that he was "in a position to control anything." [Filing No. 347 at 7.]

Numerous premises liability cases in Indiana discuss the concept of control and provide that the "thread through the law imposing liability based on occupancy of a premises is control." *Pelak v. Indiana Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005) (citation omitted). For instance, *Rider v. McCamment*, which Mr. Rudden cites in support of his argument that he lacked control over the premises, states that "a landowner is not liable if the landowner did not

control the premises and there was someone else, e.g., a contractor, who controlled the premises when the accident occurred." 938 N.E.2d 262, 268 (Ind. Ct. App. 2010). Like *Rider*, many of the cases dealing with the issue of control involve independent contractors. *Id.* at 268-69 (holding that a home builder did not control a house for purposes of establishing a duty of care "because he did not exercise actual possession or control over the deck, was not present at the site on the accident day, and had a contractor do the immediate work"); *Pelak,* 831 N.E.2d at 770 (addressing "when a premises owner owes a duty of care to an employee of an independent contractor").

In this case, it is undisputed that some Defendants were on the balcony when it collapsed, while others were at the residence but not on the balcony, and at least one Defendant – Mr. Rudden – was not at the residence at all when the balcony collapse occurred. However, the cases Defendants cite concerning control are not analogous to the facts of this case because those cases involve independent contractors. Moreover, the Indiana Supreme Court's most recent analyses of premises liability do not discuss whether or how the issue of control affects the duty owed to invitees. *See generally Goodwin,* 62 N.E.3d 384; *Rogers,* 63 N.E.3d at 320. As such, the Court declines to find as a matter of law that Defendants' duty to Ms. Sturgis was limited or eliminated based on their locations at the time of the balcony collapse. Rather, the Court will analyze what duty, if any, Defendants owed to Ms. Sturgis pursuant to the duty owed to invitees under Indiana law.

### 1. Duty Owed to Invitee under Rogers v. Martin

In examining the duty that a landowner owes an invitee, the Court's starting point is a decision handed down the Indiana Supreme Court last year – *Rogers v. Martin,* 63 N.E.3d 316 (Ind. 2016). In *Rogers*, Chief Justice Rush began by noting that the duty a landowner owes to an invitee is "well established: a landowner must exercise reasonable care for the invitee's protection

while the invitee is on the premises." *Id*. at 320. However, the Court acknowledged that "inconsistencies in Indiana case law have generated confusion over this issue." *Id*. at 321. As such, the *Rogers* Court comprehensively examined "how the landowner-invitee duty has progressed over time" and sought to provide "a workable framework for the future." *Id*. at 321.

The resulting framework distinguishes between "invitee duty in cases involving injuries due to *conditions* of the land," and those involving injuries "due to *activities* on a landowner's premises unrelated to the premises' condition." *Id*. at 323 (emphasis in original). For the latter, "foreseeability is the critical inquiry in determining whether the landowner's duty of reasonable care extends to the particular circumstances at issue." *Id*. at 323. In contrast, for cases involving injuries due to conditions of the land, *Rogers* reiterated that the test from the Restatement (Second) of Torts section 343, adopted by the Indiana Supreme Court in *Burrell*, 569 N.E.2d 637, controls. *Id*. at 323.

In light of the framework set forth by *Rogers*, the Court must determine whether Ms. Sturgis' case involves conditions on the premises or activities on the premises unrelated to the premises' condition. Defendants' Motions for Summary Judgment fail to explicitly discuss the case within the *Rogers* framework. [Filing No. 297; Filing No. 300; Filing No. 303; Filing No. 306; Filing No. 309; Filing No. 312; Filing No. 316; Filing No. 319; Filing No. 324 (each filed between April 12 and April 14, 2017, nearly six months after the Indiana Supreme Court's decision in *Rogers*).] Instead, Defendants simply analyze Ms. Sturgis' case as if it involves conditions on the premises. Mr. Rudden, for example, references the three part test set forth in *Burrell* for "physical harm caused to [an] invitee by a condition on the land." [Filing No. 298 at 4-5.] In proffering this argument, Mr. Rudden is joined by several other Defendants who incorporate by reference his argument into their own. [Filing No. 301 at 2 (Mr. Bodek joining in Mr. Rudden's

argument regarding duty); Filing No. 310 at 2 (same as to Mr. Bauer); Filing No. 313 at 2 (same as to Mr. Schreibman); Filing No. 317 at 2 (same as to Mr. Allen); Filing No. 320 at 2 (same as to Mr. Bell); Filing No. 323 at 3 (same as to Mr. Benzimra).] Similarly, Mr. Silvers and Mr. Weingold each characterize Ms. Sturgis' case as one in which she is seeking damages "for failing to warn of a dangerous condition on the Premises, presumably the balcony rail." [Filing No. 304 at 6; Filing No. 307 at 6.] Clearly, then, Defendants took the initial position that Ms. Sturgis' claim arises from a condition on the premises.

In response, Ms. Sturgis appears to agree, citing the three element test from *Burrell* and arguing that a jury question exists as to whether Defendants breached a duty with respect to a dangerous railing. [Filing No. 325 at 7-10; Filing No. 327 at 8; Filing No. 329 at 7[2].] However, Ms. Sturgis also sets forth two arguments that go beyond the *Burrell* factors and appear to concern activities on the land. First, she posits that "[e]ven if the railing was sturdy, a jury could reasonably conclude that it posed a danger to party guests under the circumstances because of overcrowding on the balcony" because a defendant "may be held liable even if he does not foresee the precise manner in which an injury occurs." [Filing No. 325 at 13 (citing *Del Signore v. Asphalt Drum Mixers*, 182 F. Supp. 2d 730, 741 (N.D. Ind. 2002); *Fort Wayne Drug Co. v. Flemion*, 93 Ind. App. 40, 175 N.E. 670, 673 (1931)).] Second, she argues that "Defendants may be held liable for failing to supervise and control the party." [Filing No. 325 at 14.]

In his reply brief, Mr. Rudden states that this argument "is a non-starter." [Filing No. 330 at 3.] Instead, he argues that the "instrumentality" of Ms. Sturgis' injury "was the balcony rail,

---

[2] Although Ms. Sturgis filed three separate responses to the various Motions for Summary Judgment, the Argument section of each is essentially identical. As such, although the Court has reviewed each of her briefs in opposition to summary judgment, [Filing No. 325; Filing No. 327; Filing No. 329], the Court will simply cite to one brief regarding her legal arguments.

not the activities of the party." [Filing No. 330 at 4.] Likewise, Mr. Silver, Mr. Weingold, Mr. Bauer, and Mr. Bodek contend that "[t]his case is about a rail collapse" and that Ms. Sturgis "fails to present any evidence that alcohol or the alleged 'overcrowding of the second floor balcony' . . . had anything to do with . . . the collapse of the railing." [Filing No. 342 at 3; Filing No. 343 at 4; Filing No. 345 at 3; Filing No. 347 at 3.]

In her surreplies, Ms. Sturgis dispenses with discussing the railing all together, focusing not on the condition of the premises, but on the activities that she alleges occurred there. In doing so, she argues that this case presents a question of "whether or not it is foreseeable that if you feed an unlimited, unsupervised supply of alcoholic beverages and make marijuana available and then allow people to go out on a second story balcony in large numbers, that said conduct could result in serious injury or harm." [Filing No. 341 at 3.]

Despite that argument, and based on the evidence presented, the Court concludes that this is a case concerning conditions on the premises. Notwithstanding her shifting theories of negligence, Ms. Sturgis has presented no evidence that her injuries occurred, "due to *activities* on a landowner's premises unrelated to the premises' condition." *Rogers*, 63 N.E.3d at 323 (emphasis in original). The Court is not persuaded by Ms. Sturgis' repeated arguments concerning the availability of alcohol and illegal drugs at the party because she has presented no evidence that the character of the social gathering at issue impacted the injury she alleges. Ms. Sturgis has not, for example, raised a genuine issue of material fact as to any jostling or horseplay involving the railing, such that any reasonable jury could find that her injury was caused by activities rather than the condition of the premises. Based on the facts presented here, the same injury could have occurred if the railing had broken during an alternative type of social gathering on the balcony, such as a study group or book club.

A case handed down by the Indiana Supreme Court the same day as *Rogers* provides a helpful contrast as an example of an injury that the Court analyzed as having occurred as a result of activities on the premises.  In *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, three plaintiffs sued a bar after a patron shot them for allegedly making a derogatory remark about his wife.  In determining whether to impose a duty upon the bar, the Court examined whether the injury was foreseeable.  62 N.E.3d at 393-94.  *Goodwin* fits within *Rogers*' definition of a case involving injuries "due to *activities* on a landowner's premises unrelated to the premises' condition," 63 N.E.3d at 323, because the injury at issue had nothing whatsoever to do with the bar's safety as a structure.  The same cannot be said of Ms. Sturgis' injury and the House at which the injury occurred.  Put simply, her injury was related to the premises' condition.[3]

Moreover, the mere act of standing on a balcony does not transform this case into one concerning activities on the land.  On this point, *Burrell* is instructive.  In *Burrell*, the plaintiff was involved in an activity wherein he "climbed up," and "squatted on a rafter" before he "moved off the rafter and knelt" on an item, which he then fell through, crashing to the floor and breaking his pelvis in three places.  *Burrell*, 569 N.E.2d at 638-39.  Nonetheless, the Indiana Supreme Court definitively stated that *Burrell* "involved an injury due to a condition on the land."  *Rogers*, 63

---

[3] Given that Ms. Sturgis' case involves a condition of the land, rather than an activity occurring on the premises, the Court will not analyze Ms. Sturgis' claims under the rubric set forth in *Goodwin*. However, it bears note that, even in *Goodwin*, where the injury occurred at a bar, the Indiana Supreme Court found that although bars "can often set the stage for rowdy behavior," the injury at issue was not foreseeable because bar owners do not "routinely contemplate that one bar patron might suddenly shoot another."  *Goodwin*, 62 N.E.3d at 393.  Finding that "in the broadest sense, all crimes anywhere are 'foreseeable,'" the Court stated that "to impose a blanket duty on proprietors to afford protection to their patrons would make proprietors insurers of their patrons' safety which is contrary to the public policy of this state."  *Id.* (citations omitted).  Thus, even if this Court had analyzed Ms. Sturgis' claim under the *Goodwin* test, her arguments about the presence of drugs and alcohol at the party or the rowdy nature of the party would likely be insufficient to establish foreseeability as a matter of law under Indiana precedent.

N.E.3d at 323.  Similarly, despite the fact that an activity was occurring at the time Ms. Sturgis was allegedly injured, the injury at issue involved a condition on the land – namely the latent instability of the balcony railing.   Indeed, as Ms. Sturgis states in her briefs in opposition to summary judgment, "[i]t is undisputed that the railing broke or collapsed during the party."  [Filing No. 325 at 10.]  As such, the Court will analyze Ms. Sturgis' claim consistent with the method set forth in § 343 of the Restatement (Second) of Torts, as adopted by *Burrell* for cases involving injuries due to conditions of the land.

Before doing so, the Court will briefly address several arguments throughout the parties' briefs in which the legal framework set forth by *Rogers v. Martin* is misapplied, misstated, or misunderstood.

First, one issue that dominates many of Defendants' reply briefs is the concept of foreseeability.  Mr. Bodek and Mr. Silvers, for instance, argue that they "owed a duty to Ms. Sturgis under Section 343 only if the risk of harm due to the dangerous condition is foreseeable." [Filing No. 347 at 6; Filing No. 342 at 6.]  In this regard, Defendants appear to be responding to Ms. Sturgis' arguments concerning foreseeability in her response brief, in which she states that "the question Plaintiff should draw to the Court's attention, however, is whether or not foreseeability is a component of defining a duty."   [Filing No. 341 at 2-3.]  But the Indiana Supreme Court already definitively answered Ms. Sturgis' question in *Rogers* when it stated that the "foreseeability component within the landowner-invitee duty is already explicit within Restatement (Second) of Torts section 343" because "that section subjects landowners to a duty only if the risk of harm due to a dangerous condition of the land was foreseeable."  63 N.E.3d at 324.  Accordingly, the Court will not address foreseeability, except as it exists within the test set forth in § 343.

In addition, the test set forth by several Defendants, "focuses on the general class of persons of which the plaintiff was (i.e. a party guest) and whether the harm suffered was of the kind normally to be expected (i.e. harm caused by a structural failure), without addressing the specific facts of the occurrence." [Filing No. 347 at 6.] However, as previously explained, this is the test for invitee duty in cases involving injuries due to activities on a landowner's premises unrelated to the premises' condition. *Rogers*, 63 N.E.3d at 323. Having concluded that this case involves injuries due to conditions of the land, the Court must apply the test set forth in § 343 to determine whether Defendants owed Ms. Sturgis a duty, rather than the foreseeability test to which the parties repeatedly refer.

Finally, Ms. Sturgis and many Defendants draw the Court's attention to *Polet v. ESG Sec., Inc.*, 66 N.E.3d 972. *Polet* was decided a few months after *Rogers*, but presents a very different fact pattern in which the Indiana Court of Appeals considered the duty a security firm had with respect to a stage collapse in inclement weather. *Id.* at 981. In determining the security firm's duty, the *Polet* Court noted several factors, including the content of an agreement involving the concert venue, the scope of work in said agreement, and the players involved in a meeting related to the weather. *Id.* at 981. None of these factors are applicable to Ms. Sturgis' case. *Polet*, therefore, is not determinative of the outcome of Ms. Sturgis' claims against Defendants. Instead, the Court will consider Ms. Sturgis' claims consistent with the methodology set forth by *Burrell*.

### 2. *Duty Owed to Invitee for Injuries due to Conditions of the Land under* Burrell v. Meads

Turning then to the case that the *Rogers* Court called "Indiana's seminal premises liability case," 63 N.E.3d at 323, *Burrell v. Meads* was significant in the development of Indiana premises liability law for several reasons. First, it marked a change in the classification of a social guest from a licensee to that of an invitee. *Burrell*, 569 N.E.2d at 643. As a result of this change, the

duty that a landowner owes to a social guest was elevated to the "highest duty" under premises liability: the duty to exercise reasonable care for a social guest's protection while she is on the landowner's premises. *Id.* Now, twenty-six years after *Burrell*, reasonable care remains the applicable standard for social guests. *See, e.g.*, *Daviess-Martin Cty. Joint Parks & Recreation Dep't v. Estate of Abel by Abel*, 77 N.E.3d 1280, 1286 (Ind. Ct. App. 2017) (citing the duty to exercise reasonable care for an invitee's protection).

Second, *Burrell* adopted the Restatement (Second) of Torts § 343 as the "best definition" of the landowner/invitee duty. *Id.* This section provides that:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 639-40 (quoting the Restatement (Second) of Torts § 343). *Rogers* reaffirmed that "[w]hen a physical injury occurs as a result of a condition on the land, the three elements described in Restatement (Second) of Torts section 343 accurately describe the landowner—invitee duty." *Rogers*, 63 N.E.3d at 322-23. Put another way, § 343 continues to provide "fixed parameters" that "limit[] the scope of the duty" that landowners owe invitees, but only as it applies to dangerous conditions on the land. *Id.* at 323. "In order for a premises liability theory to apply, each of the three elements of § 343 must be present." *Id.* at 322 (quoting *Duffy v. Ben Dee, Inc.*, 651 N.E.2d 320, 322 (Ind. Ct. App. 1995)).

a. <u>Element 1 under § 343</u>

The first element under § 343 provides that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land only if he "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees." *Burrell*, 569 N.E.2d at 639-40 (quoting the Restatement (Second) of Torts § 343).

Each Defendant argues that Ms. Sturgis' claim fails on the first element of § 343. For example, Mr. Rudden alleges that he "did not have actual knowledge of any problem with the balcony rail that posed a risk to anyone leaning against it" and he also "had no constructive knowledge of any problem with the balcony rail." [Filing No. 298 at 4.] To the contrary, he contends that "[t]he balcony rail appeared to be safe to lean against; it was not a dangerous condition on the property within the meaning of Section 343." [Filing No. 298 at 4.] Six Defendants join Mr. Rudden in his argument on this point. [Filing No. 301 at 2 (Mr. Bodek joining Mr. Rudden's "argument regarding the first element of premises liability"); Filing No. 310 at 2 (same as to Mr. Bauer); Filing No. 313 at 3 (same as to Mr. Schreibman); Filing No. 317 at 2 (same as to Mr. Allen); Filing No. 320 at 2 (same as to Mr. Bell); Filing No. 323 at 3 (same as to Mr. Benzimra).] Similarly, Mr. Silvers and Mr. Weingold argue that "[t]here is no material evidence that [Mr. Silvers or Mr. Weingold] had actual or constructive knowledge of the presence of [a] hazardous condition (i.e. knew the balcony railing was unsound) on the Premises." [Filing No. 304 at 8; Filing No. 307 at 8.] With regard to actual knowledge, Mr. Silvers and Mr. Weingold argue that the "undisputed evidence" demonstrates that they were unaware of any conditions regarding the balcony railing because: (1) Ms. Sturgis admitted that "the railing was not seemingly hazardous to lean against;" (2) no previous tenant at the Premises had ever complained of the

balcony railing; (3) there is no evidence that Mr. Silvers or Mr. Weingold "did anything to the railing to make it unsound;" (4) their landlord "did not post any warnings concerning the condition of the balcony or railing . . . or restrict any use of the balcony;" and (5) neither Mr. Silvers nor Mr. Weingold were told that the balcony was unsound. [Filing No. 304 at 8-9; Filing No. 307 at 8-9.] With regard to constructive knowledge, Mr. Silvers and Mr. Weingold argue that "there is no evidence that any condition existed for a period of time that [they] knew about." [Filing No. 304 at 9; Filing No. 307 at 9.]

Ms. Sturgis does not argue that Defendants had actual knowledge of the railing's condition. However, she contends that "there are sufficient facts to create a jury question on the issue of Defendants' constructive notice." [Filing No. 325 at 12.] Arguing that "the issue is whether a diligent inspection would have disclosed a dangerous condition," [Filing No. 325 at 11], Ms. Sturgis contends that Defendants had constructive knowledge of the railing's condition because they had lived in the house for over a year and "had almost 15 months to inspect the premises and observe deterioration that occurred on an exterior railing over that period of time." [Filing No. 325 at 12-13.]

In their reply briefs, many Defendants reiterate that they had no constructive notice under § 343. Mr. Rudden, for example, contends Ms. Sturgis' "repeated references" to "'the railing's dangerous condition' and a 'defect in the railing' fail to sustain her burden of proving the first element of a premises liability case, as [her] arguments are not evidence." [Filing No. 330 at 3.] Mr. Silvers and Mr. Weingold argue that they were "unaware of any condition(s) of the balcony railing" and "unaware that the condition(s) of the balcony railing would pose a risk of collapse or harm to anyone sitting or leaning on it." [Filing No. 342 at 7; Filing No. 343 at 7.]

Ms. Sturgis does not address the issue of constructive knowledge in either of her Sur-replies. [Filing No. 341; Filing No. 351.]

The rationale behind the first element of § 343 is that an invitor "is not the insurer of the invitee's safety" so "before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012); *Bearman v. Univ. of Notre Dame*, 453 N.E.2d 1196, 1198 (Ind. Ct. App. 1983). Put another way, "a landowner's duty of care to an invitee is a known or should have known standard." *Wellington Green Homeowners' Ass'n v. Parsons*, 768 N.E.2d 923, 929 (Ind. Ct. App. 2002) (citing *Burrell*, 569 N.E.2d at 640). Indiana courts have found that "[t]here is constructive knowledge when a condition has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the invitor had used ordinary care." *Gasser Chair Co. v. Nordengreen*, 991 N.E.2d 122, 126-27 (Ind. Ct. App. 2013). Indiana courts have looked to the specific evidence put forth by the parties in order to determine whether a trier of fact could infer that a defendant knew or should have known of the particular condition. *See id.* at 126 (finding no constructive knowledge where there "had been no reported problems" of a harmful condition on the land); *Wellington*, 768 N.E.2d at 928-29 (finding no constructive knowledge where there was no evidence that appellants knew or should have known about a defect on the premises or would have discovered the defect upon taking certain actions); *Howerton v. Red Ribbon, Inc.*, 715 N.E.2d 963, 965 (Ind. Ct. App. 1999) (finding no constructive knowledge where "[n]o evidence was adduced of any reports of a problem with any unit" on the premises and no reasonable inference could be drawn from the plaintiff's "evidence to support their rhetorical claims that proper inspection would have 'discovered the defect'").

In this case, the issue of constructive knowledge simply comes down to whether there is any evidence in the record that Defendants should have known about the condition of the railing. The only factor Ms. Sturgis points to in this regard is the fact that Defendants had resided on the premises for 15 months prior to the railing collapse. But Ms. Sturgis presents no evidence other than her own conjecture to support the notion that there had, in fact, been deterioration of the railing since Defendants took possession of the property. Nor does she cite any authority for the proposition that possession for a certain amount of time, without more, equates to constructive knowledge of a premises' defects. Adopting such a rule would essentially result in this Court imposing strict liability for tenants who have been in possession of property for 15 months or longer, and would run afoul of the Indiana Supreme Court's admonition against imposing blanket duties. *See Goodwin*, 62 N.E.3d at 394 (stating that "to impose a blanket duty on proprietors to afford protection to their patrons would make proprietors insurers of their patrons' safety which is contrary to the public policy of this state," and that adopting such a rule "would abandon the notion of liability based on negligence and enter the realm of strict liability in tort which assumes no negligence of the actor, but chooses to impose liability anyway") (quotations omitted). As such, the Court concludes that Defendants' possession of the rental house for 15 months does not constitute constructive knowledge.

Ms. Stugis presents no other evidence that Defendants had constructive knowledge about the balcony's condition. For example, she presents no evidence of prior complaints about the balcony's condition. To the contrary, the record indicates that there had been no previous complaints about the rail. [Filing No. 305-2 at 10.]

Having found no actual or constructive knowledge, the Court concludes that Ms. Sturgis' claims against Defendants fail as a matter of law under the Restatement (Second) of Torts § 343,

as adopted by *Burrell*.  Although the inquiry may stop there, the Court will briefly address the parties' arguments regarding the second and third elements of § 343.

> ### b. Element 2 under § 343

Four Defendants present arguments concerning the second element of § 343, which imposes liability only if a possessor of land should expect that an invitee "will not discover or realize the danger, or will fail to protect themselves against it."  *Burrell*, 569 N.E.2d at 639-40 (quoting the Restatement (Second) of Torts § 343).  Mr. Silvers, Mr. Bodek, Mr. Schreibman, and Mr. Benzimra each argue that Ms. Sturgis' testimony regarding her observations of the balcony show that she "was at least in an equal position to know of the condition of the railing" as they were.  [Filing No. 304 at 9; Filing No. 307 at 9; Filing No. 313 at 3 (Mr. Schreibman joining in Mr. Weingold's argument); Filing No. 323 at 3 (Mr. Benzimra joining in Mr. Weingold's argument).]  Ms. Sturgis does not specifically address this argument in her response brief, but does argue that she "obviously did not have as long as Defendants had to discover dangerous conditions on the premises."  [Filing No. 327 at 12.]

"Whether a landowner has superior knowledge goes to the question of breach, not of duty, and it is one factor among many used to determine if there was a breach."  *Nagel v. N. Indiana Pub. Serv. Co.*, 26 N.E.3d 30, 46 (Ind. Ct. App.) (quoting *Rhodes v. Wright*, 805 N.E.2d 382, 388 (Ind. 2004)).  Accordingly, the Court will consider Defendants' arguments as they relate to breach, as set forth in Part III.B, herein.

> ### c. Element 3 under § 343

The third element under § 343 provides that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land only if he "fails to exercise

reasonable care to protect them against the danger." *Burrell*, 569 N.E.2d at 639-40 (quoting the Restatement (Second) of Torts § 343).

Mr. Rudden, Mr. Silvers, Mr. Schreibman, and Mr. Benzimra each argue that there is no genuine issue of material fact as to the third element of § 343. Mr. Rudden argues that he was in "no position to take precautions" to protect Ms. Sturgis from risks she did not perceive because he was at the library when the accident occurred. [Filing No. 298 at 5.] Similarly, Mr. Silvers argues that he "could not have failed to exercise reasonable care to protect [Ms. Sturgis] because he was not on the deck when the rail collapsed." [Filing No. 304 at 11.] Mr. Schreibman and Mr. Benzimra each argue that they were in no position to protect Ms. Sturgis from harm because they were not facing the railing when it collapsed. [Filing No. 313 at 3; Filing No. 323 at 3.]

Here again, Ms. Sturgis does not make any specific arguments regarding the third element of § 343.

Having found that there is no evidence that Defendants had actual or constructive knowledge of the railing's condition, it follows that Defendants could not have protected Ms. Sturgis from a dangerous railing of which they were unaware. *See, e.g., Wal-Mart Stores, Inc. v. Wall*, 712 N.E.2d 1015, 1017 (Ind. Ct. App. 1999) (finding evidence of a failure to protect customers from ice only after finding that constructive knowledge existed).

The designated evidence conclusively establishes that one of the elements of the premises liability test is not satisfied. As such, Defendants did not owe Ms. Sturgis a duty as a matter of law. The Court will, however, briefly discuss breach.

### B. Breach

The parties present fairly succinct discussions concerning breach, and the Court will follow suit. Each Defendant alleges that there was no breach of duty in this case because Defendants'

knowledge was no greater than Ms. Sturgis'. [Filing No. 298 at 6; Filing No. 301 at 3; Filing No. 304 at 12; Filing No. 307 at 11; Filing No. 310 at 2-3; Filing No. 313 at 4; Filing No. 317 at 2-3; Filing No. 320 at 2; Filing No. 323 at 4.]

In response, Ms. Sturgis argues that because "party guests undoubtedly obscured [her] view of the railing," a jury question exists "as to whether Defendants had superior knowledge of the railing's condition." [Filing No. 325 at 13.]

The parties do not discuss breach in their reply and surreply briefs.

Generally, whether a breach of duty has occurred is a question of fact. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 9 (Ind. 2010). However, a breach of duty may be determined as a matter of law when the facts are undisputed and lead to a single inference or conclusion. *Id.* "The comparative knowledge of a possessor of land and an invitee regarding known or obvious dangers may properly be taken into consideration in determining whether the possessor breached the duty of reasonable care under Sections 343 and 343A of the Restatement (Second) of Torts." *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 21 (Ind. Ct. App. 2015) (quoting *Smith v. Baxter*, 796 N.E.2d 242, 245 (Ind. 2003)).

As with duty, the question of breach requires the Court to examine the specific evidence put forth by the parties. Given the Court's earlier finding that Defendants lacked both knowledge and constructive knowledge of the railing's condition, the Court will only examine the evidence surrounding Ms. Sturgis' comparative knowledge. On this point, Ms. Sturgis speculates that Defendants' comparative knowledge of the railing was greater than hers, stating that "party guests undoubtedly obscured [her] view of the railing." [Filing No. 325 at 13.] However, the record shows that in her deposition testimony, Ms. Sturgis testified that she was standing near or directly leaning on the railing when it collapsed. [Filing No. 299 at 10 (in which Ms. Sturgis testifies that

she was "most likely" leaning against the railing when it broke and she didn't recall whether she was "just standing near it" or "leaning on it"); Filing No. 299 at 11 (in which Ms. Sturgis testifies that she voluntarily leaned on the railing on April 12)]. She further testified that she did not see anything about the railing that made her think she should not lean on it, but that it was "too small" and "too old" to carry someone's weight. [Filing No. 305-1 at 13-15.] In short, Ms. Sturgis' deposition testimony shows that she could see the railing, was near it, and, at some point, leaned on it. She also observed some characteristics about its age. As such, the evidence directly contradicts her contention in her brief that her view of the railing was obscured by party guests.

Viewing the facts and drawing inferences in the manner most favorable to Ms. Sturgis, the evidence in this case does not present a triable issue of fact regarding whether Defendants breached their duty of reasonable care to Ms. Sturgis. As such, even assuming *arguendo* that Defendants owed her a duty, based on the evidence before the Court, Defendants would nonetheless be entitled to summary judgment on the issue of breach.

## IV.
### CONCLUSION

The Court's inquiry regarding negligence ends where it began: with an observation quoted by the Indiana Court of Appeals over 100 years ago that when a Court rules that there is no evidence of negligence, it does "something more than is embraced in an ordinary ruling that there is no evidence of a fact." *Cincinnati*, 34 N.E. at 617 (quoting Holmes, Common Law at 115). Instead, it rules that the acts or omissions in question "do not constitute a ground of legal liability; and in this way the law is gradually enriching itself from daily life, as it should." *Id.*

Lacking any precedential case with analogous facts, the Court applied the principles set forth by the Indiana Supreme Court in *Rogers v. Martin*, 63 N.E.3d 316 and *Burrell v. Meads*, 569 N.E.2d 637, and found no evidence of negligence on the part of Defendants. Accordingly, the

Court **GRANTS** Defendants' respective Motions for Summary Judgment.  [Filing No. 297; Filing No. 300; Filing No. 303; Filing No. 306; Filing No. 309; Filing No. 312; Filing No. 316; Filing No. 319; and Filing No. 322.]

In addition, as set forth herein, the objections put forth by Mr. Silvers, Mr. Weingold, and Mr. Bodek are **OVERRULED**.  [Filing No. 342 at 1; Filing No. 343 at 1-2; Filing No. 347 at 2.]

As a result of the foregoing, the only remaining defendant in this case is Dylan Schwaber, against whom the Court entered a default on October 21, 2016 pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  [Filing No. 185.]  Ms. Sturgis is must file a motion for default judgment as to Mr. Schwaber by **November 15, 2017**, or show cause why this Court should not enter final judgment.

Date: 10/31/2017

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Service via U.S. Mail to:**

Dylan Schwaber
c/o Marc Schwaber
1325 Wolver Hollow Road
Upper Brookville, NY 11771